IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01568-RM-MJW

REGINA GARCIA as Parent and Next Friend to T.D., a minor,

Plaintiff,

v.

KELCEY PATTON and
THE DENVER DEPARTMENT OF HUMAN SERVICES,

Defendants.

---

### ORDER REGARDING

### CYNTHIA JAMISON, LPC'S AND PROGRESSIVE THERAPY SYSTEMS' OBJECTION BY SUBPOENAED THIRD PARTY (Docket No. 22);

### DENVER PROBATION'S MOTION TO PARTIALLY QUASH SUBPOENA *DUCES TECUM* DIRECTED TO THE DENVER ADULT PROBATION DEPARTMENT, OR ALTERNATIVELY, FOR ENTRY OF A PROTECTIVE ORDER (Docket No. 26);

### PLAINTIFF'S MOTION TO COMPEL AND OPPOSITION TO MOTION TO QUASH (SUBPOENA TO CYNTHIA JAMISON, LPC & PROGRESSIVE THERAPY SYSTEMS) (Docket No. 31);

### and

### PLAINTIFF'S MOTION TO COMPEL (SUBPOENA TO RSA, INC.) (Docket No. 57).

---

**Michael J. Watanabe**
**United States Magistrate Judge**

Tiercel Duerson was convicted of an attempted sexual offense against a minor.

As part of his probation agreement, he participated in mental-health and sex-offender

counseling.   The treatment records from that counseling are arguably privileged under

*Jaffee v. Redmond*, 518 U.S. 1 (1996), but are also highly relevant to the case before the

2

Court—a civil case to which Mr. Duerson is not a party.   Four motions concerning those records are now pending.   As a matter of first impression, the Court concludes that a selective-waiver doctrine should apply under the present circumstances—and therefore, that these records are privileged and cannot be disclosed without Mr. Duerson's consent.

The Court has considered the motions and briefs, taken judicial notice of the court's file on this case, directed additional documents to be filed, and considered the relevant Federal Rules of Civil Procedure, statutes, and case law.   The Court now being fully informed makes the following findings of fact, conclusions of law, and orders.

## FACTUAL BACKGROUND

Mr. Duerson pled guilty to Attempted Sexual Assault on a Child on March 24, 2006, in Denver County District Court Case No. 05-CR-1546.   The victim was his minor daughter, P.G.   Mr. Duerson was sentenced to eight years of Sex Offender Supervised Probation.   As a condition of his probation, Mr. Duerson was ordered to complete counseling and to sign a disclosure form for his counseling records.   (Document 66-8, p.2. ("You shall attend and actively participate in a sex offender evaluation and treatment program . . . .   You shall submit, at your own expense, to any program of psychological or physiological assessment and monitoring . . . .   You shall sign Releases of Information to allow the probation officer to communicate with other professionals involved in your treatment program . . . .")   Colorado's Sex Offender Management Board referred Mr. Duerson to Redirecting Sexual Aggression, Inc. ("RSA") for treatment in May 2006.   He violated his probation and was incarcerated from November 2007 until March

3

2009, when he was released on parole.   On parole, the Sex Offender Management

Board referred Mr. Duerson to Progressive Therapy Systems ("PTS") for treatment.

According to the Complaint in this case, Denver's Department of Human Services

removed Plaintiff's son, T.D., from Plaintiff's home in 2010 and placed him with his father,

Mr. Duerson—resulting in severe abuse to T.D. at Mr. Duerson's hands.   Plaintiff has

sued the city under 42 U.S.C. § 1983 for doing so, acting as next friend of T.D.   The

records from Mr. Duerson's criminal case and sex-offender treatment are clearly relevant,

and Plaintiff has subpoenaed those records from a number of sources.   At issue here:

- The Denver Probation Department ("DPD") received a subpoena for all records relating to Mr. Duerson.   DPD has produced most of the requested documents, but has moved either to quash the subpoena or for a protective order as regards Mr. Duerson's treatment records, references to treatment in other documents, and the presentence investigation report.   This motion is fully briefed.[1]   (Docket Nos. 26, 34, 36, & 53.)

- Licensed Professional Counselor Cynthia Jamison and her employer, PTS, received a subpoena for all records relating to Mr. Duerson and also "[a]ll documents related to testimony provided, or prepared to provide, in Case No. 10-JV-0668 in the Denver Juvenile Court on or about January 22, 2013."   PTS filed an objection, which this Court views as a motion to quash; Plaintiff moved to compel, and the motions are now fully briefed.[2]   (Docket Nos. 22, 31, 33, & 35.)

---

[1]  DPD initially objected to producing any information that might identify P.G., the victim of Mr. Duerson's crime.   P.G. has since consented to such disclosure, and DPD has produced documents previously withheld on that basis.   DPD also initially objected to producing certain criminal background records; those records have been procured by Plaintiff elsewhere, and so Plaintiff has withdrawn its request for those documents.

[2] The parties do not explain why TPS provided or prepared to provide testimony for a Denver Juvenile Court case.   The Court assumes the testimony relates to Mr. Duerson's counseling and is therefore subject to the same privilege analysis as the rest of TPS's records.   The Court will entertain a motion to reconsider, as to these records, if that assumption is incorrect.

4

- RSA received a subpoena for all records relating to Mr. Duerson.   It declined to produce any records, citing confidentiality of mental-health records.   Plaintiff has moved to compel.   (Docket No. 57.)

Like Mr. Duerson, DPD, PTS, and RSA are not parties to this lawsuit.

Mr. Duerson has not authorized the release of any information to Plaintiff or to

Plaintiff's attorneys.   However, as ordered by the sentencing court, he signed a HIPAA

waiver form stating:

> I, Tiercel Duerson, authorize the exchange of and disclosure of information pertaining to me, between the Probation Department for the 2nd Judicial District, State of Colorado, and members of the Interagency Community Supervision Team.   The persons to whom information will be disclosed pursuant to this authorization are:
>
> > Sex offender treatment evaluator/provider/program approved by the Colorado Sex Offender Management Board.
> >
> > Polygraph examiner approved by the Colorado Sex Offender Management Board.
> >
> > Abel Assessment of Sexual Interest/plethysmograph examiner.
> >
> > Victim(s) therapist and other involved professionals.
> >
> > Physician as indicated by the Interagency Community Supervision Team (monitored medication, antabuse, etc.)
> >
> > Employer(s).
> >
> > Federal, state, county, or city law enforcement agencies.

(Docket No. 31-3.)   The form is a select-all-that-apply form; the foregoing options were

selected in a version signed by Mr. Duerson in January 2007.   There is an undated

version of the form in the record selecting the same boxes.   (Docket No. 35-2.)   The

context would suggest the undated version was signed in April 2006—and for purposes of

these motions, the Court so finds.

5

As part of his treatment with PTS, Mr. Duerson was required to sign a form titled

"Sex Offender Treatment Contract and Safety Plan."   (Docket No. 33 p. 2 & n.1.)   That

contract included the following confidentiality provision:

> Your personal information is confidential with the following exceptions according to state law and Sex Offender Management Board (SOMB) standards:
>
> If you are thought to be of imminent danger to yourself or others or if you are gravely disabled due to a mental illness, crucial information needed to allow you to receive emergency mental health care may be released to other agencies who can help you.
>
> Any report of suspected child abuse or neglect will be reported to the appropriate authorities, as required by state law.
>
> You should know that signing this contract is, as required by SOMB standards (3.200), a waiver of confidentiality and a release of information to include but not limited to your supervising officer, community corrections staff, polygraph examiners, guardians ad litem or custodial relative of your victim, to the victim(s) who you have offended, and any other therapists who provide you with services.   Progressive Therapy Systems agrees to safeguard your personal information and only release information to other parties in regard to your compliance and progress with treatment and information about your risk, threats and/or possible escalation of violence. Your waiver of confidentiality extends beyond termination until you provide written notice to discontinue this waiver to Progressive Therapy Systems.
>
> In order to allow your supervising officer to monitor your treatment progress, treatment compliance, and your risk to others, your therapist will share information with your officer.
>
> Any information that you hear about or from any group member is strictly confidential.   Clients who disclose personal information about other clients to people outside their group are subject to termination from this treatment program.

(Docket No. 33-1.)

6

It is undisputed that none of the parties in this case are within the scope of any of the confidentiality waivers signed or agreed to by Mr. Duerson.   Further, there is no indication that any party has provided Mr. Duerson with notice of the subpoenas and the subject motions (Docket Nos. 22, 26, 31, and 57).   The Court finds that Mr. Duerson has not been given notice nor provided due process as to the disclosure of the subpoenaed records.

While Plaintiff insists on production of the subpoenaed documents, Plaintiff has no objection to protective orders restricting access to those documents.

## DISCUSSION

The Court finds that it has jurisdiction over the subject matter and over the parties to this lawsuit, that venue is proper in the state and District of Colorado, and that all parties have been given a fair and adequate opportunity to be heard.

Under Federal Rule of Civil Procedure 45(d)(3)(A)(iii), the Court must quash or modify a subpoena that requires disclosure of privileged or other protected matter.   Here, because this is a federal-question case under 28 U.S.C. § 1331 and federal law will provide the rules for decision, any applicable privileges will be governed by federal common law.   Fed. R. Evid. 501.   That said, "the policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one."   *Jaffee*, 518 U.S. at 12–13.   Further, state confidentiality laws should be accommodated if it is possible to do so without undermining federal

interests.   *See Gottlieb v. Wiles*, 143 F.R.D. 235, 237 (D. Colo. 1992); *United States v. King*, 73 F.R.D. 103, 105 (E.D. N.Y. 1976).

**I.**   **Counseling Records**

DPD, PTS, and RSA object to producing Mr. Duerson's treatment records on the basis of Colorado's psychotherapist-patient privilege.   They cite Colorado Revised Statutes (C.R.S.) § 13-90-107(1)(g), and point out that the records cannot be disclosed, even *in camera*, without Mr. Duerson's consent.   *See People v. Sisneros*, 55 P. 3d 797, 800 (Colo. 2002).   Further, under state law, TPS and RSA are prohibited from producing the records, even pursuant to a court order, unless that court order involved notice to Mr. Duerson and an opportunity for hearing.   C.R.S. § 27-65-121(1)(f).

Those statutes have no direct application here, but federal law also provides for a psychotherapist-patient privilege.   *Jaffee*, 518 U.S. 1.   Plaintiff argues that the privilege does not apply here, for two reasons: (1) Mr. Duerson's treatment was not confidential and was therefore never privileged in the first place, and (2) even if the treatment was privileged, he waived that privilege for all purposes by signing the HIPAA forms.   The Court disagrees.

**A.**   **Expectation of Confidentiality**

It is true, as Plaintiff argues, that a communication is not privileged if the party asserting the privilege does not keep the communication confidential.   As a general rule, "[a]ny voluntary disclosure by the client is inconsistent with the [privileged] relationship and waives the privilege."   *United States v. Bernard*, 877 F.2d 1463, 1465 (10th Cir.

8

1989).   But that rule does not apply to involuntary disclosures, *United States v. Ary*, 518 F.3d 775, 783–85 (10th Cir. 2008), and it is far from clear that Mr. Duerson *voluntarily* disclosed anything.   Certainly, in the strictest sense of the word, Mr. Duerson had a choice between signing his probation agreement and going to prison.   But that sort of formalistic reasoning is not persuasive.   Viewed in a more realistic light, Mr. Duerson did not choose to waive confidentiality—it was a compelled waiver, part of the price for staying out of prison.   There are numerous cases deciding that Courts have the authority to impose such waivers as a condition of probation.   *See, e.g.*, *United States v. Daniels*, 541 F.3d 915, 929 (9th Cir. 2008); *United States v. Dupes*, 2008 WL 90073, at *4 (2d Cir.2008); *United States v. Lopez*, 258 F.3d 1053, 1057 (9th Cir.2001); *United States v. Cooper*, 171 F.3d 582, 587 (8th Cir.1999).   Those cases do not consider whether the compelled disclosure waives privilege in later proceedings—but by holding that courts have the authority to compel disclosure even when the defendants object to it, these cases suggest that such disclosures are in fact judicially compelled, *i.e.*, not voluntary.

The expectation-of-confidentiality cases relied upon by Plaintiff are distinguishable for that reason.   In each, the mental-health counseling took place either as part of some essentially voluntary activity like applying for a job, or as part of an investigation in anticipation of litigation.   *Doe v. Ensey*, 220 F.R.D. 422 (M.D. Pa. 2004) (counseling records of priests prepared as part of sex-abuse investigation); *Kamper v. Gray*, 182 F.R.D. 597 (E.D. Mo. 1998) (mental evaluations of police officer from pre-employment screening and from post-shooting investigation); *Barrett v. Vojtas*, 182 F.R.D. 177 (W.D.

9

Pa. 1998) (same).   Such records are fully voluntary; moreover, they are neither for the purpose of treatment nor intended to be confidential.   Here, by contrast, Mr. Duerson's counseling took place for the purpose of actual treatment—and confidentiality was waived only for the limited purpose of allowing the state to enforce or compel that treatment.

The Court has not found many analogous cases of privilege waiver *as part of a probation agreement.*   This is not surprising, as it is hard to imagine a condition of probation that would require a criminal defendant to waive the attorney-client privilege, or the priest-penitent privilege, or the like.   The Court has found only one federal case where the defendant argued that mental-health records remained privileged despite such a judicially compelled disclosure: *United States v. Kokoski*, 435 F. App'x 472, 476–77 (6th Cir. 2011).   But there, unlike here, the treatment records were being used within the scope of the waiver: the probation department sought to use them to revoke probation. The defendant thus argued that the waiver was made under duress and was invalid; he didn't argue, as DPD, TPS, and RSA do here, that the treatment records remained privileged for other purposes.

The *Kokoski* court is obviously correct that, because courts have the ability to compel disclosure for purposes of monitoring probation, the otherwise-confidential information must be admissible in a probation-revocation hearing.   But that reasoning does not require finding that the privilege has been waived for all purposes—and given

10

the less-than-fully voluntary nature of the waiver, the Court must consider whether a selective-waiver doctrine should apply.

### B.    Selective Waiver

Plaintiff correctly points out that the "selective waiver" doctrine has not been approved by the Tenth Circuit.   As the Tenth Circuit explained in *In re Qwest Communications International, Inc. Securities Litigation*, 450 F.3d 1179 (10th Cir. 2006), the doctrine has been adopted by some courts, in the attorney-client context, as a way of encouraging cooperation with government investigations.   *Id.* at 1186–88.   The Tenth Circuit disagreed with those courts, declining to adopt a rule that would allow litigants to disclose privileged information to government agencies but maintain the privilege against third parties.   *Id.* at 1201.   But the Tenth Circuit did not entirely foreclose the idea: it explicitly found that "the record *in this case* does not justify adoption of selective waiver." *Id.* (emphasis added).   The court came to its conclusion after evaluating six considerations—and here, each of those six considerations counsels in favor of the opposite conclusion.[3]

First, the Tenth Circuit noted that the record did not support the purported policy behind the selective-waiver doctrine: promoting government investigations.   *Id.* at 1193. To the contrary, Qwest had willingly disclosed nearly a quarter-million pages of documents to the Department of Justice and the Securities and Exchange Commission

---

[3] The Tenth Circuit actually considered a seventh factor as well—the problematic "culture of waiver" allegedly imposed upon corporate America by the federal government. *Qwest*, 450 F.3d at 1199–1200.   It rejected the concern based on the institutional limitations of the judiciary.   The consideration has no relevance here.

11

without any assurance that the records would be protected by the selective-waiver doctrine; further, the federal government had specifically declined to endorse the doctrine at the Tenth Circuit's invitation. *Id.* Here, by contrast, the record does not undercut the purported government interest. Mr. Duerson's participation in the treatment programs came subject to assurances that his records would remain confidential within the probation system.

Second, in *Qwest*, the Tenth Circuit noted that the confidentiality agreements between Qwest and DOJ left very few restrictions on DOJ's use of the documents. *Id.* at 1194. Here, by contrast, the confidentiality waiver was tightly circumscribed: disclosure was limited to (1) those entities directly involved in Mr. Duerson's treatment and in supervising his probation, and (2) those entities implicated by immediate public-safety concerns, like Mr. Duerson's employer and his victim.

Third, and most importantly, the Tenth Circuit observed that the purpose of the selective-waiver doctrine—facilitating government investigations—had no relationship to the policies underlying privilege—promoting frank communication between lawyers and clients. *Id.* at 1195. Indeed, "[r]ather than promoting exchange between attorney and client, selective waiver could have the opposite effect of inhibiting such communication." *Id.* Here, by contrast, the policy behind selective waiver is entirely consonant with the policies underlying the psychotherapist-patient privilege. Probationers in Mr. Duerson's position have already been forced to disclose their treatment records to the probation office. But by allowing selective waiver, probationers would be encouraged to

12

communicate with their therapists fully and freely nonetheless—knowing that although

their probation officer will have access to their records, no one else will.   Further, unlike

*Qwest*—where the SEC's and DOJ's interest in the communications ran counter to those

of Qwest's lawyers'—a probation officer's interest in the records aligns with those of the

counselor.   As DPD persuasively puts it:

> Denver Probation's repository of confidential and privileged information is
> intended to be used by the Colorado criminal courts to monitor compliance
> with probation and to sanction noncompliance in accordance with the law.
> . . . [D]isclosure to third parties undermines a supervised probationary
> system that operates most efficiently and effectively when probationers are
> open and honest, and they possess some reasonable expectation of
> privacy that the information they disclose in treatment or to their probation
> officer is intended for the very specific purpose of monitoring their
> compliance with court-ordered probation, and not subject to the reach of a
> third-party private litigant, no matter how meritorious any personal claim
> may be.

(Docket No. 36, pp. 5–6.)   Certainly, a different context would lead to a different

conclusion.   But here, in the context of compelled disclosure and coerced rehabilitative

treatment, selective waiver reinforces the policies of the underlying privilege.

Fourth, the *Qwest* court examined the fairness to the parties—noting the inherent

inequity in allowing Qwest to disclose information to get a better deal from the SEC but

still refuse to disclose that information to private litigants.   450 F.3d at 1195–96.   There

is no analogous unfairness here.   Unlike Qwest, Mr. Duerson has not sought to withhold

from Plaintiff the same information that he traded to the government in exchange for some

benefit.   *Cf. United States v. Hudson*, 2013 WL 4768084, at *3–5 (D. Kan. Sept. 5, 2013)

(rejecting selective waiver where privilege-holder had disclosed the records in an

application for disability benefits).   To be sure, the information was generated while

13

receiving the benefit of a deferred sentence.   But Mr. Duerson did not trade the information for that benefit—he enrolled in the treatment for that benefit, and he signed the waiver because he was compelled to as an ancillary matter.   Further, in *Qwest*, the Tenth Circuit found there to be little if any unfairness to Qwest if the selective-waiver rule were not adopted.   450 F.3d at 1195.   Here, by contrast, Mr. Duerson has not even been given notice of this proceeding.

Fifth, the Tenth Circuit noted the great weight of authority, in both federal and state courts, against selective waiver in the attorney-client context.   *Id.* at 1196–97.   Here, by contrast, there is very little case law on point.   The Court has discovered no federal cases in the context of probation agreements, other than the *Kokoski* case; the Court has likewise found few state cases.   Plaintiff does direct the Court to two state cases, but both are distinguishable.   In *Saenz v. Alexander*, 584 So. 2d 1061, 1062 (Fla. App. 1991), the party asserting the privilege had waived confidentiality as part of a deferred-prosecution agreement, similar to Mr. Duerson.   But the party asserting the privilege was also the defendant in the case: he was being sued for civil damages by the victim of his crime.   He was very literally, then, picking and choosing among his opponents—placing his mental health at issue to get the government off his back in the criminal case, while trying to keep that same information away from his victim in a related civil case.   Further, it is worth noting that at least one court in Florida has come to a different conclusion on the question.   *Davis v. Dep't of Corrs.*, 2014 WL 3866472, at *4–5 (M.D. Fla. Aug. 6, 2014) (applying same state statutory privilege in same

14

probation-records context).   In Plaintiff's other case, *Hertog, ex rel S.A.H. v. City of Seattle*, 979 P.2d 400 (Wash. 1999), the court resolved the question not on grounds of selective waiver, but on the lack of any expectation of confidentiality.   The court did not consider whether the probationer's waiver of confidentiality was truly voluntary, and as a result this Court finds the case less persuasive.   More compelling is a Colorado case arising in a different context.   In *L.A.N. v. L.M.B.*, 292 P.3d 942, 950–53 (Colo. 2013), the Colorado Supreme Court decided to allow limited-scope waivers of the psychotherapist-patient privilege.   A limited-scope waiver is somewhat distinct from a selective waiver, insofar as a "limited scope" waiver discloses some but not all of the confidential information, while a "selective" waiver discloses information to some but not all third parties.   But both attempts at partial waiver are historically frowned upon at common law, for the same reasons—and despite those reasons, the court endorsed a limited waiver of psychotherapist-patient privilege for purposes of determining the best interest of the child in guardian *ad litem* cases.   *Id.* at 950–53.   The rehabilitative interest here is a different one, but the government interests are equally consistent with the purpose of the privilege.

Finally, the *Qwest* court noted that privileges are derogation of the truth and that new privileges should not easily be found.   450 F.3d at 1197–99.   The variation of selective waiver at issue there could be viewed just as readily as a new "law enforcement" or "government investigations" privilege.   *Id.*   Here, it might be argued, the question could be construed as a new probation-department privilege.   But DPD has already

produced numerous documents related to probation—it objects only to a handful of

documents protected by state confidentiality laws on the basis of their content, not their

source.   Further, as the Tenth Circuit noted, many states have adopted selective-waiver

statutes for certain narrow categories of information reported to supervisory agencies,

rather than "in the general law enforcement context."   *Id.* at 1198 n.8.   This case is

closely analogous to those "particularized circumstances" where selective waiver is

deemed appropriate.

  Ultimately, in *Qwest* the Tenth Circuit sided with the majority rule on attorney-client

communications, which it summarized this way:

> "The client cannot be permitted to pick and choose among his opponents,
> waiving the privilege for some and resurrecting the claim of confidentiality to
> obstruct others, or to invoke the privilege as to communications whose
> confidentiality he has already compromised for his own benefit."   "We
> believe that the attorney-client privilege should be available only at the
> traditional price: a litigant who wishes to assert confidentiality must maintain
> genuine confidentiality."

*Id.* at 1187 (quoting *Permian Corp. v. United States,* 665 F.2d 1214, 1221–22 (D.C. Cir.

1981) (internal citations omitted)).   This reasoning simply does not apply to Mr.

Duerson's case.   Mr. Duerson has not tried to "pick and choose among his opponents."

He provided a judicially compelled waiver, for the purpose of his probation—presumably,

without any way of knowing that some years later his treatment records might be relevant

to civil litigation to which he is not a party.

  The Court finds that the Tenth Circuit would likely adopt some variation of selective

waiver in this context.   The Court therefore holds that Mr. Duerson's sex-offender and

mental-health treatment records are privileged and that Mr. Duerson has not waived that

16

privilege.   Plaintiff may not compel the disclosure of these records without Mr. Duerson's consent.

## II.   **Presentence Investigation Report and Associated Materials**

As the Supreme Court noted in *U.S. Department of Justice v. Julian*:

> [C]ourts have been very reluctant to give *third parties* access to the presentence investigation report prepared for some other individual or individuals.   As the Government points out, one reason for this is the fear that disclosure of the reports will have a chilling effect on the willingness of various individuals to contribute information that will be incorporated into the report.   A second reason is the need to protect the confidentiality of the information contained in the report.   Accordingly, the courts have typically required some showing of special need before they will allow a third party to obtain a copy of a presentence report.

486 U.S. 1, 12 (1988) (internal citations omitted).   In this case, Plaintiff sues Denver Department of Human Services, arguing that the Department deprived T.D. of substantive due process by housing him with Mr. Duerson.   As to these records, Plaintiff argues only that "Defendant DDHS should have required [Mr. Duerson] to provide these documents, and then reviewed them, to determine whether [Mr. Duerson] posed a risk of harm to T.D. before placing him in [Mr. Duerson]'s home."   (Docket No. 34, p. 8.) Although this theory does establish the relevance of the documents, it does not establish any special need.   Plaintiff has already received various criminal background documents (Docket No. 34, p. 9); moreover, Plaintiff can establish this point with public documents from Mr. Duerson's criminal cases and through testimony conceding that the Department did not do as Plaintiff suggests it should have.   Without a stronger showing of need by Plaintiff, DPD's motion to quash this portion of the subpoena must be granted.

17

## **ORDER**

WHEREFORE, based upon these findings of fact and conclusions of law, it is

hereby ORDERED:

1.   That Cynthia Jamison, LPC's and Progressive Therapy Systems' Objection
by Subpoenaed Third Party [which this court views as a Motion Quash
Subpoena] (Docket No. 22) is GRANTED;

2.   That the Motion to Partially Quash Subpoena *Duces Tecum* Directed to the
Denver Adult Probation Department, or Alternatively, for Entry of a
Protective Order (Docket No. 26) is GRANTED to the extent not already
stipulated by the parties as described in footnote 1 above;

3.   That Plaintiff's Motion to Compel and Opposition to Motion to Quash
(Subpoena to Cynthia Jamison, LPC & Progressive Therapy Systems)
(Docket No. 31) is DENIED;

4.   That Plaintiff's Motion to Compel (Subpoena to RSA, Inc.) (Docket No. 57)
is DENIED;

5.   That each party shall pay their own attorney fees and costs for this motion.

Done this 21st day of October 2014.

BY THE COURT

s/Michael J. Watanabe
MICHAEL J. WATANABE
U.S. MAGISTRATE JUDGE